O’Neall, J.
dissenting. — In this case, it is my misfortune to differ so much from a majority of the Court, that I am constrained, very much against my wishes, to express the reasons for my dissent from their opinion.
That which I have regarded as settled law, for more than twenty years, I am now told is no law, at all. A case decided in ’28, in which it was held that the finding of a grand jury “ no bill” and the consequent discharge of the party by the Court constitute prima farde evidence of want of probable cause, is now to be reversed, and for no other reason, which I can perceive, except that it has not been printed. In Slider v. Myers, the defendant set on foot a prosecution for perjury; he and a man of the name of Prowell made a joint affidavit charging the perjury. There was no evidence whatever of a want of probable cause, save the finding “ no billa motion was made for a nonsuit: the presiding Judge (Richardson, J.) overruled it, holding expressly, that the “ no bill” was prima fade evidence of want of probable cause. The case went to the jury, and the Judge charged them, that “ the finding by the grand jury was only prima facie evidence of the want of probable cause, and that the defendant’s own oath, when the warrant was taken out, which the plaintiff introduced, supported by the testimony of Prowell and Herron, rebutted the presumption arising from this finding of the grand jury, as I thought (said .the Judge) very strongly, if not conclusively.” Notwithstanding this charge, the jury found for the plaintiff $1000. A motion was made in the Court of Appeals for a nonsuit, on the ground, amongst others, that there was no evidence of a want of probable cause. The case of Byne v. Moore, which is the strongest authority relied on for the defendant* was cited in the argument of that cause. But notwithstanding that, the Court of Appeals dismissed the motions, both for nonsuit and new trial, with the remark that “ this case presented a mixed question of law and fact proper *584 for the consideration of the jury, under the direction of the Court, and this Court do not feel authorized to interfere with the verdict.”
M~Mu1. 74.
13 Pet. Abr. 296.
9 East, 361, & 1 Camp. 199.
1 Camp. 199. Note A. 203.
Ib. note A. 203.
From that time forward, I took the law to be settled by that case. Entering upon the duties of a Judge, in the course of that year, in the various cases of malicious prosecution tried before me, (and it will be seen on referring to the reports, that many such cases have passed through my hands,) I continued to rule and hold that the finding by the grand jury of “ no bill” and the discharge thereupon by the <. fourt constituted prima facie evidence of a want of probable cause. In no case until this, in twenty-one years, has this ruling been questioned! In Cockfield v. Bramboy, in delivering the opinion of the Court, it was said: “ The mere letting fall a prosecution does not raise an implication of a want of probable cause. The only cases where that is implied, are when the grand jury find “ no bill,'’ or the defendant is acquitted by the petit jury, and the presiding Judge orders a copy of the indictment.” In the opinion containing this recognition of the rule of Slider v. Myers, Judges Richardson and Wardlaw concurred without note or comment. If it had been wrong, it is strange it should have then escaped without qualification by one or the other of these Judges 1
I have looked over the English cases, and into a very well considered case in Massachusetts, and I think there is no such inflexible rule, as that undertaken now to be set up, that the finding “no bill” by the grand jury and the discharge thereupon by the Court are not prima facie evidence of a want of probable cause. The case of Byne v. Moore presented various other reasons for the nonsuit, besides that relating to the want of probable cause. The indictment there was for an assault and battery, and in such a case a misdemeanor, involving no disgrace,-it is clear there must be proved to sus- tain the action, actual injury, express malice, and want of probable cause. There was no proof of the two first, and Lord Mansfield puts his judgment as much (if not more) up- on the ground that there was no proof of actual injury.
InPurcell v. McNamara, thelaintiff was acquitted by the petit jury, and the only ground of the want of probable cause relied on was. that the defendant (the prosecutor) being called, at the trial, did not answer. This was held not to be evidence of want of probable cause. In Sykes v. Dunbar, “no bill” was found by one grand jury, and “true bill” by another, on which the plaintiff was acquitted, for want of prosecution: this was held not enough to negative probable cause, and for a very good reason. For the finding of a sub- sequent true bill shewed probable cause, and an acquittal for want of prosecution was no evidence of want of it, according to the case in the text. Incledon v. Berry was a repetition *585 of the same ruling, “ that the mere non prosecution of a charge made on oath against another was not sufficient to maintain such an action,” malicious prosecmion.
2 ’499‘ Rice’ 51.' RiceiS06-
19 Eng, c. L. Rep. 47.
4~Eng. C.L.
1. McMul. 558.
In note A. p. 206, the reporter points out the distinctions, how far probable cause is a ques.ion of law, and how far it is one of fact, and also when malice is necessary to be proved, in addition to the want of probable cause. These matters are, it is true, fully pointed out and enforced in Lipford v. McCollum, Frierson v. Hewitt, Perdue v. Connerly, Sitton v. Farr, but inasmuch as our own cases are often lost sight of in the desire to exhibit much learning, I thought it might not be amiss to turn to the note already cited.
In Williams v. Taylor the defendant had indicted the plaintiff for perjury; the two first bills, when the defendant did not appear before the grand jury, were thrown out; the third was found ; it was suspended for three years, when it was called for trial; the defendant was in Court, but did not appear to give evidence on being called; the plaintiff was acquitted. The Judge below nonsuited the plaintiff: but, the Judges of the Common Pleas all concurring, the nonsuit was set aside, on the ground that there was sufficient evidence of a want of probable cause. In it Park, J. said, what I believe to be law-“ slight evidence is sufficient to throw on the other side the otiusot shewing that there was probable cause.” This was a very important modification of Purcell v. McNamara, and in favor of the action, instead of narrowing the grounds to sustain it, as is about to be done in this case.
It istrue, in Panton v. Williams, the Judges assembled in the Exchequer Chamber, held, in 1841, that the question o~ probable cause was for the Judge, and that he was to tell th~ jury on all the facts, whether probable cause had or had not been made out. But I think the case, when examined, only holds what is the true rule.-" the Judge's business is to tell the jury what constitutes probable cause, and then it is for the jury on the facts to say whether it has been proved to exist or not." For in that case the Judge left the whole question as one of fact to the jury. But if the case decides more than that, it is directly at war with our cases, Lipford v. McCollum, Perdue v. Connerly, Sitton v. Farr, and Parris v. Waddell, in all of which it was held, as I have before stated, that the Judge was to tell the jury what constituted probable cause, and then it was for them to say whether it existed or not. In Parris v. Waddell, Butler, J. said-"The general rule is recogniz€d, that where the facts are contested, probable cause is a mixed question of law and fact, to be decided by the jury under the instructions and explanations of the presiding Judge." This was no obiter dictum, but was expressly in answer to the let and 2d grounds of appeal. *586 In all the other cases the opinions were delivered by myself, and therefore I make no extracts from them.
24 Pick. SI.
In Stone v. Croaker, which was an action for malicious prosecution, the proof on the part of the plaintiff was certainly less than here, — the complaint of the defendant to a justice of the peace, charging the plaintiff with the theft, and the record of the trial and discharge of the plaintiff by another justice of the peace, was that relied on by the plaintiff. This discharge was held by the Judge presiding, Wilde, J., tobe pri-ma facie evidence of want of probable cause. It is very true, the Court of Appeals laid down the general rule, that “amere acquittal, or that the defendant abandoned the prosecution,” was not enough. This I do not doubt, when the word acquittal is properly understood, for it means, as I understand, a legal ending of the case on a trial, in which both parties are heard. In that case, however, the Judges took the whole evidence, and .agreed with the Judge below, that there was ■not probable cause, and the verdict was sustained. From this review I think there is nothing which ought to interfere with the decision in Slider v. Myers.
But it is said it would subject prosecutors to continual actions, if the mere ignoring of a bill by the grand jury, and. the discharge by the Court of the plaintiff, would be enough to shew prima,tfacie want of probable cause! Certainly there can be no force in this objection, when It is remembered that whatever the defendant, or even his wife, swore to-before the grand jury, is evidence for him: and if it discloses a reasonable ground, it is enough for his protection, unless it be shewn .that he knowingly made a false statement. One would think, that when the law thus gives a man-the privilege of being judged-out of his own mouth, that itnugbt to be all which justice could -demand, unless it be, as is often the case, that justice is the last thing which a defendant in a :Court of justice desires ! Judges, however, ought to be-the ministers of justice, and ought not to suffer dislike of particular actions .to influence their determination. I know malicious prosecutions are not favored. But by .that I do not understand more than that .the plaintiff is required to make out his case; when he does so, he stands as fairly before the Court as any other party. It is, however, urged that “no bill” by the grand jury may be the result of their discretion and not from a just examination of the facts. Concede for a moment, that this is ■so, and how stands the argument; —for the-defendant, or against Mm-? I confess it seems to me that it is more against him than any other. Such a finding, if written out, would be in substance this, “ we find this matter to be of so trifling a character, that we think it does not deserve further examination.” Ought not a man preferring such a charge to be visited as severely with punishment as one who, without a *587 fact to sustain him, sets on foot a criminal prosecution? But-“no bill” by the grand jury means, in every legal intendment, that there was no evidence to sustain the indictment. Sittan v. Farr.
Rice 309.
. In this case, however, although I thought that the “ no bill” of the grand jury, and the discharge of the plaintiff was evidence of a want of probable cause, yet the plaintiff added to it evidence of good character, and upon these combined, I ruled that a prima facie case was made out. The Court do not order a nonsuit: but they undertake to do that which I pronounce them utterly incompetent to do, to review the testimony, and to say, against the opinion of the presiding Judge and the jury, that there was probable cause! The moment the Court decides there is evidence of a want of probable cause,, the question becomes, as is said in Slider v. Myers, a mixed question of law and fact; that is, the Court is to tell the jury what constitutes probable cause, and then it is for the jury to decide,, on the proof, whether the plaintiff had or had not probable cause, when he instituted the prosecution. All this was done, on this occasion; and a review of the facts stated in the report, will, 1 dare say, make different imppressions on different minds. For example, owners of plantations out of Newberry district, where the defendant is unknown, may think he had probable cause. But men who do not employ overseers, and even owners of plantations in Newberry, where the defendant is well known, 1 think, would hardly be persuaded he had probable cause. Two fads in the case, added to the finding of “ no bill” and the discharge by the Court, satisfied me that the defendant had no probable cause : 1st. The character of the plaintiff, which certainly was an extraordinarily good one, proved for so humble a man as the plaintiff, and this too known to the defendant, for he had been for two years previous his overseer; 2d. That the defendant knew of the facts, on which he made the charge of larceny, certainly in the summer of ’47; but notwithstanding, he continued the plaintiff, as his overseer, until .the end of the year, and even then, did nor institute the prosecution until February, 1848, when he had been sued, in slander, for vei-bally charging the plaintiff with stealing his corn.
It has, however, been argued here, that this verdict was the resit it of excitement against the defendant out of doors, got up by the plaintiff and his friends. It has been characterized as the verdict of King Mob! I think this is a mere notion. The defendant is, I know, an unpopular man. Whether justly so or not, I will not pretend here to say. I have long been in the habit of regarding him with kind feelings; and have been disposed to throw the mantle of charity over many of his early faults. I think this may also be a pretty general feeling in the district. I am sure of one thing, that no jury *588 in Newberry, which I ever saw empannelled, in nearly forty years, would wilfully do the defendant injustice. I can say here, that I endeavored, with all the influence I possessed, to keep the jury from visiting the defendant with two heavy a measure of damages ; and in that respect he certainly had a very eiflcient protector in the intelligent foreman, who had himself too often encountered prejudice, not to know the importance of preventing it from having effect in a jury room.
But it is said that this verdict is too high; it is more than I would have found; but notwithstanding that, I cannot say the jury have exceeded their just powers. If this be the case with the presiding Judge, how can the Court of Appeals regulate it? Have they had the facts spread before them by the witnesses? Do they know the plaintiff and defendant? No! But the jury do ! Who is most likely to decide right, the jury or this Court? I have no hesitation in saying, the jury ! and I shall not be surprised, if John Harmon, like Johnson and Hanahan, should find that a new trial, instead of benefitting him, should increase his grief by making him pay a larger sum by way of damages.